UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE 09-21017-CR-JORDAN/MCALIELY

UNITED STATES OF AMERICA,

-vs-

DAYANA MORENO,

_____/

### MOTION TO DISMISS

Defendant, DAYANA MORENO ("Moreno'") , by and through her undersigned counsel, moves the court, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, for an order dismissing Count 1 and Count 4 of the Indictment, or, in the alternative, for an order, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, directing the government to file and serve on the Defendant a bill of particulars. In support of the foregoing, Moreno respectfully submits that there is insufficient evidence to support a prima facia case against her. Even considering the evidence in the light most favorable to the Government, the case law shows that this case should not proceed.

### THE WEAKNESS OF THE GOVERNMENT'S CASE

Moreno is charged by in Counts 1 and 4 of the Indictment with a violation of Title 21 United States Code, Section 841(a)(1) and 846. DEA agent in his probable cause affidavit alleges that on November 12, 2009, the DEA received information regarding the cocaine trafficking activities of Joaquin Reigosa and

"his lieutenant," Cesar Gonzalez. The DEA recorded calls between the CI, Reigosa, and Gonzalez about cocaine delivery activities. On November 20, 2009, at 8:35 PM, Gonzalez drove to Angel E. Alvarez's house. Gonzalez made a statement to the DEA that Gonzalez had delivered cocaine to Alvarez. Only one single paragraph of the 14 paragraph Probable Cause Affidavit makes any significant reference to Moreno – basically that Moreno was present in the house. In its complete form, paragraph 14 of the Probable Cause Affidavit reads as follows:

> 12. At approximately 11:00 p.m., agents knocked on the door of the residence located at 10057 NW 127th St., Hialeah Gardens, Florida. MORENO answered the door and agents asked her if they could come in and she gestured for them to enter. Agents could see ALVAREZ in the ~~apartment~~ residence [SN]. After allowing the agents to enter, and a few feet from the entranceway, agents viewed over five vacuum sealed kilogram-sized baggies, consistent with the cocaine packaging discovered in GONZALEZ's Escalade. The kilogram-sized baggies were in plain view and strewn on the kitchen counter. The kilogram-sized baggies were wet. Based on your Affiant's training and experience the wet baggies are consistent with efforts to dispose of the cocaine prior to the agents' arrival. At approximately 11:15 p.m., agents gained written consent from ALVAREZ to search the residence. Shortly thereafter, agents discovered an Eggo waffle box, on which was written "Papa" on the top flap, which contained a white powder which field tested positive for cocaine hydrochloride. Residue on the kilogram-sized baggies also field tested positive for cocaine hydrochloride. Both ALVAREZ and MORENO were taken into custody.

That is the full extent of any reference to Moreno in the Probable Cause Affidavit. No mention is made by the C.I., Reigosa, or Gonzalez relative to Moreno being involved in the cocaine conspiracy. In fact, Moreno allowed the DEA to come

inside Alvarez's house.  There is no evidence that Moreno was involved in any narcotics activity, was present during any conspiratorial conversations, is captured on any tape recording or made any incriminating statements whatsoever.  Basically, Moreno arrived in the United States, at the young age of seventeen, on or about July 22, 2007. Moreno's was born on October 26, 1989, in Cuba.  Moreno is a 20 years old, Hispanic female.  Moreno resided with her uncle in Cape Coral, Florida, till she moved in with Alvarez. Moreno met Alvarez sometime in November or December of 2007 in Miami, Florida.  Moreno and Alvarez started living together in or about January of 2008.  Moreno has an 11th grade education.  Moreno does not speak English.

These bare allegations, if proven, would not satisfy the government's burden of proof at trial to establish Moreno knowing and intentional participation in a narcotics conspiracy. To satisfy its burden of proving Moreno's guilt of a Title 21 conspiracy charge, the government would be required to prove beyond a reasonable doubt: (1) an agreement between Moreno and one or more persons; (2) Moreno's knowing participation in it; and (3) her criminal intent to promote the illegal objectives. U.S. v. Arias-Izquierdo, 449 F.3d 1168 (11th Cir.2006); U.S. v. Hernandez, 433 F.3d 1328 (11th Cir.2005); U.S. v. Thampson, 422 F.3d 1285 (11th Cir.2005). "While circumstantial evidence may be used in proving a conspiracy, more than mere presence at the scene of the crime must be shown." U.S. v. Jenkins, 779 F.2d 606, 609(11th Cir.1986) (citing to U.S. v. Pintado, 715 F.2d 1501, 1504 (11th Cir.1983).   More than mere presence, guilty knowledge, or even sympathetic observations, is required to support conviction for

conspiracy to possess and distribute drugs, rather, showing of knowing participation is required; government must prove that agreement existed between two or more persons illegally to possess and distribute drugs and that Moreno knowingly and voluntarily joined or participated in the conspiracy. U.S. v. Lyons, 53 F.3d 1198, 1201 (11th Cir. 1995). " '[C]lose association with a co-conspirator or mere presence' at the scene of the illegal activity, standing alone, is insufficient to support a conspiracy conviction." U.S .v. Jiminez, 564 3d 1280 (11th Cir. 2009) (citing U.S. v. Lyons, 53 F.3d 1198, 1201 (11th Cir.1995). Mere presence at the scene of a crime is insufficient to support a conspiracy conviction. U.S. v. Bailey, 510 F.3d 726 (7th Cir.2007); U.S. v. Hernandez, 443 F.3d 1328, 1333 (11th Cir.2005) (citing U.S. v. McDowell, 250 F.3d 1354, 1365 (11th Cir.2001). A defendant's mere presence at the scene of a criminal act or association with conspirators does not constitute intentional participation in the conspiracy. U.S. v. Huezo, 546 F.3d 174 (2nd Cir.2008). Suspicious circumstances are not enough to sustain a conviction for conspiracy, and mere association with those implicated in an unlawful undertaking is not enough to prove knowing involvement; likewise, a defendant's mere presence at the scene of a criminal act or association with conspirator does not constitute intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy. U.S. v. Lorenzo, 534 F.3d 153 (2nd Cir.2008). Association with a coconspirator is insufficient to prove participation in a conspiracy. U.S. v. Newton, 44 F.3d 913 (11th Cir.1995) (citing to U.S. v. Kelly, 749 F.2d 15412 (11th Cir.), cert. denied, 472 U.S. 1029, 105 S.Ct.3506, 87 L.Ed.2d 636 (1985).

4

"Moreover, it is well-settled that a conspiracy cannot be proven solely by family relationship or other types of close associations." U.S. v. White, 569 F.2d 263, 268 (5th Cir.1978)[1] (citations omitted). "Mere similarity of conduct among various persons and the fact they have associated with or are related to each other do not establish the existence of a conspiracy. Id. However, "[w]hen the government attempts to prove the existence of a conspiracy by circumstantial evidence, each link in the inferential chain must be clearly proven." U.S. v. Gaivan, 693 F.2d 417, 419 (5th Cir. 1982). See also U.S. v. Vilegas, 911 F.2d at 628. Furthermore, guilt may not be assumed solely through close association between persons." U.S. v Jenkins, 779 F.2d at 616.

While the government need not exclude every reasonable hypothesis of innocence, a verdict cannot stand where the evidence "is wholly consistent with an obvious and reasonable innocent interpretation, and where little more than conjecture supports the hypothesis of guilt. U.S. v. Kelly, 888 F.2d 732, 740 (11th Cir. 1989) (citations omitted). Measured against these standards, even when the evidence in this case is viewed in a light favoring the government, it would be insufficient to sustain Moreno's guilt.

"An individual is not a conspirator merely because he is aware of a conspiracy and associates with its members." U.S. v. Casamento, 887 F.2d 1141, 1167 (2d Cir. 1989) (citations omitted). See also U.S. v. Jenkins, 779 F.2d

---

[1] In US v. White, 569 F.2d at 267, the Court wrote that "[t]he government's theory apparently is that Phillip and Claudell were involved in a heroin conspiracy because: (1) Claudell sells heroin; (2) Phillip sells heroin; and (3) they are married. This theory cannot withstand careful scrutiny.
 Evidence of the conspiracy's existence is, to put it charitably, minimal."

at 615-16 (reversing defendant's narcotics conviction where government merely showed that defendant was present at residences where drugs were picked up and made telephone calls between his "number and various numbers attributed to other parties in this case"); U.S. v. Fredericks, 857 F.2d 733, 736 (11th Cir. 1988) (evidence insufficient that defendant acted as a lookout notwithstanding evidence that he could have been present and that he visited home of co-defendant).

To take the argument one step further to the extreme, the fact that someone who lives with a drug dealer, even with full knowledge that their companion is a drug dealer, is not enough to render the companion a part of a conspiracy with the drug dealer.  For example, in U.S v. Cepeda, 768 F.2d 1515, 1517 (2d Cir. 1985), the court found insufficient evidence that a defendant was guilty of conspiracy where the defendant was living in a house which was used by others as a "cutting mills' for drugs. The court so found, in spite of the defendants possession of drug paraphernalia, such as scales and "cut" (lactose used to "cut" drugs), and $1,151.00 in cash.  The Cepeda court cited to Judge Learned Hand's reference to conspiracy as "that darling of the modern prosecutor's nursery."  768 F.2d at 1515.  The Cepeda court also noted that, 768 F.2d at 1515,

> Justice Jackson, in a memorable opinion, referred to the history of conspiracy as exemplifying, in Cardozo's phrase, "the tendency of principle to expand itself to the limit of its logic'" protesting that "loose practice as to this offense constitutes a serious threat to fairness in our administration of justice."  Krulewitch v. United States, 336 U.S. 440, 445-6, 69 S.Ct. 716, 719-20, 93 L.Ed. 790 (1949) (Jackson, J., concurring) (footnote omitted.)

6

Similarly in U.S. v. Soto, 716 K2d 989 (2d Cir. 1983), the court found that the government had presented insufficient evidence of knowing participation in the conspiracy where the defendant and her young child lived at a "drug mill' for three weeks and was trusted by the cotenants involved in the conspiracy. The court in Soto expressly rejected the government's argument that an inference of the defendant's membership in a narcotics conspiracy could be inferred from her "sustained and regular presence in that apartment." Soto, at 991. Moreover, the court observed that it mattered not that the drugs were present and that the defendant had knowledge of the commission of crimes in her apartment by other tenants. Id. *See also* U.S. v. Ocampo, 964 F.2d 80(1st Cir. 1992) (reversing conspiracy conviction of woman living with drug trafficker, even though search of house produced beeper and large amount of chemicals used to process cocaine); U.S. v Mehtala, 578 F.2d 6(1st Cir. 1978) (reversing conviction of woman who shared cabin on vessel with marijuana importer, since government failed to show that she had any ownership interest in the marijuana on board).

More suspicious circumstances than exist in the instant case were also found insufficient to show knowing membership in a drug conspiracy in U.S. v. Gaviria, 740 F.2d 174 (2d Cir. 1984). In that case, the defendant drove a co-defendant, a friend, to a "stash pad." The defendant entered and left the "stash pad" with the co-defendant in a "suspicious manner." When stopped by agents, the defendant lied to them concerning her presence in the "stash pad" and led them to cocaine at the "stash pad." Finally, cocaine was found in the rear passenger's side of the defendant's car. Because the court found the evidence

indicated that the defendant did not, herself, place the drugs in her car, she was "guilty", at best, of merely being present at the location of a drug conspiracy and of association with conspirators with knowledge of their crime. The court ruled that there was still insufficient evidence of her knowing membership in the conspiracy. 740 F.2d at 884.

In the instant case, there is no evidence that Moreno was ever aware of any conversations regarding drugs. No narcotics-related conversations occurred in her presence. No telephone intercepted calls or video surveillance contain Dayana voice or image.

The fact that Moreno has been indicted can be viewed as selective prosecution. In order to prevail in defense of selective prosecution, Moreno must make a prima facie showing that she has been singled out for prosecution, and that the government's selective prosecution has been constitutionally invidious. Owen v. Wainwright, 806 F.2d 1519 (11th Cir.1986), certiorari denied, 107 S.Ct. 2466, 481 U.S. 1071, 95 L.Ed. 875. The Indictment in this case includes three males and Moreno, as the only female. It is undisputed that Moreno is Alvarez live-in girlfriend, and had, in fact, been living in the same house as Alvarez since approximately January 2008. No other significant others, girl friends, or wives, have been indicted. It is undisputed that Reigosa has a wife, Grechen Figera, and that they live together a house worth approximately $297,000.00. It is undisputed that Moreno's finger prints has not been found on any exhibits taken from the Alvarez household. Moreover, no evidence exists by way of video or audio recordings which would connect Moreno to the cocaine conspiracy. All the

evidence that was taken from the Alvarez household was found either in the kitchen area or outside the house.  No evidence was found in any place in the house where Moreno had primary exclusive control, such as where Moreno's clothing and other personal items were kept.

At review of the evidence taken from the Alvarez household shows that exhibits 9 – 12  were seized from the Alvarez household and taken to a lab for analysis.  Exhibit 9 is a brown paper bag containing a white powdery substance. Exhibit 10 is an Eggo brand waffle box containing a white powdery substance discovered in the trash can located outside the house.  Exhibit 11 is vacuum seal packaging containing a white powdery residue found on the countertop near the kitchen sink.  Exhibit 12 is a clear plastic bag containing a white powder found on an upper shelf in the kitchen cabinet.  The laboratory report on Exhibit 10 shows a residue amount of cocaine.  The laboratory report on Exhibit 12 shows 22 grams of cocaine.  Despite the laboratory findings of less than 23 grams of cocaine found at Alvarez house, Moreno is before this court on an indictment charging her with five (5) or more kilograms of cocaine.

Absent any proof that Moreno was aware of, much less intended to assist Alvarez in a conspiracy involving the cocaine, the most the government has is suspicious circumstances and mere presence. Convictions cannot rest on such evidence. See, e.g.. U.S. v. Villegas, 911 F.2d at 630; U.S. v. Kelly, 888 F.2d at 741; U.S v. Eddy, 597 F.2d 430,433 (5th Cir. 1979); U.S. v. Palacios, 556 F.2d 1359, 1365 (5th Cir. 1977).

WHEREFORE based on the foregoing, the Defendant, Moreno, respectfully requests that this Motion to Dismiss charges be GRANTED.

s/Joseph A. Chambrot, Esq.

Attorney for Defendant

1885 NW North River Drive

Miami, FL  33125

(305)-547-2101

joecham@bellsouth.net

### CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel for record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Joseph A. Chambrot____
