UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-CR-21017-JORDAN

UNITED STATES OF AMERICA

v.

DAYANA MORENO,

    Defendant.
_____/

## GOVERNMENT'S RESPONSE TO MOTION TO DISMISS THE INDICTMENT AGAINST DEFENDANT DAYANA MORENO AND, IN THE ALTERNATIVE, MOTION FOR BILL OF PARTICULARS

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this response to the defendant's Motion to Dismiss the Indictment And, In the Alternative, Motion for Bill of Particulars ("Motion"). DE 55. The Motion should be denied because the indictment is properly charged, the government has provided extensive discovery, and the Motion improperly seeks pretrial dismissal of an indictment based on an alleged lack of evidence (i.e., lack of probable cause). For purposes of dismissal, however, the Motion ignores that a properly constituted Grand Jury returned an indictment against the defendant and, thus, probable cause is presumed and unassailable.

### FACTUAL BACKGROUND

On November 12, 2009, DEA agents received information from a confidential source ("CS"), regarding the cocaine trafficking activities of Joaquin REIGOSA and his lieutenant, Cesar GONZALEZ. Specifically, the CS provided information that a large shipment of cocaine would be arriving in the Miami area within the following week. The CS stated that the cocaine came from Mexico and was transported using tractor trailers. The CS also said that it was

1

common practice for REIGOSA to provide GONZALEZ with multiple kilograms of cocaine, which GONZALEZ would place within cardboard boxes into the back of his white Cadillac Escalade and deliver to multiple addresses. The CS had previously received cocaine from REIGOSA and GONZALEZ in this fashion on numerous occasions.

On the evening of November 20, 2009, the CS received and made several recorded telephone calls to and from REIGOSA indicating that the shipment had arrived that day and the CS would receive at least five (5) kilograms of cocaine. During one call, the CS asks REIGOSA whether he should be expecting "El Negro" to deliver the cocaine and REIGOSA said that he would try to get the cocaine to the CS that evening. In another call, REIGOSA tells the CS that he should be expecting "El Negro" shortly. "El Negro" is the nickname for Cesar E. GONZALEZ.

On November 20, 2009, agents established visual surveillance at GONZALEZ's residence, and saw GONZALEZ back into the driveway. Shortly thereafter, the CS received a recorded telephone call from REIGOSA indicating that the cocaine shipment would be delivered to the CS's residence between 8:30 p.m. and 9:00 p.m. that night.

Agents then observed GONZALEZ depart his residence in the Cadillac Escalade. Agents observed, firsthand, the Cadillac Escalade back into the driveway at 10057 NW 127 St., Hialeah Gardens, Florida, the address of Angel E. ALVAREZ and Dayana MORENO. GONZALEZ departed ALVAREZ's house and proceeded to 9844 NW 122nd Terrace, Hialeah Gardens, Florida. After leaving this location, agents conducted a traffic stop of GONZALEZ's vehicle, and located several white boxes which had been taped shut in the rear compartment. The boxes contained approximately thirteen (13) kilograms of cocaine wrapped tightly in black tape. GONZALEZ was arrested, and after giving consent to search his residence, agents located

approximately seven (7) more kilograms of cocaine, 5 bundles of currency totaling approximately $35,000 and a notebook consistent with a drug ledger.

GONZALEZ stated that he had delivered cocaine that evening to "Papi" in an Eggo waffle box, and gave the intersection of the location where ALVAREZ and MORENO live. Agents proceeded to ALVAREZ's and MORENO's residence. MORENO answered the door and agents asked her if they could come in and she gestured for them to enter. Strewn on the kitchen counter, agents saw agents viewed approximately twelve (12) vacuum sealed kilogram-sized baggies, consistent with the cocaine packaging discovered in GONZALEZ's Escalade. The kilogram-sized baggies were wet consistent with efforts to dispose of the cocaine prior to the agents' arrival. Agents also discovered an Eggo waffle box, on which was written "Papa" on the top flap, which contained a white powder which field tested positive for cocaine. Residue on the kilogram-sized baggies also field tested positive for cocaine. Both ALVAREZ and MORENO were taken into custody.

## ARGUMENT

**I.   LEGAL PRINCIPLES GOVERNING A BILL OF PARTICULARS**

Generalized discovery is not the proper function of a bill of particulars. *See United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981). "To allow the bill of particulars to serve as a wholesale discovery device would actually frustrate the federal discovery rule." *United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986). Rather, "the purpose of a true bill of particulars is threefold: to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *Id.* at 1441. A bill of particulars, properly viewed, supplements an indictment by providing the defendant with

information necessary for trial preparation." *Id*. "A bill of particulars is not required where the information sought has already been provided by other sources, such as the indictment and discovery and it is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." United States v. Roberts, 174 Fed. App'x 475, 477 (11th Cir. 2006).

II. **THE DEFENDANT'S REQUEST FOR A BILL OF PARTICULARS DOES NOT SPECIFY WHAT INFORMATION SHE SEEKS AND, IN ANY EVENT, THE GOVERNMENT HAS PROVIDED DISCOVERY**

With these principles in mind, it is apparent that the defense's Motion is improper. First, the defendant's Motion seeks a bill of particulars from the government, but does not specify what type of information she is seeking. *See United States v. McClean*, 528 F.2d 1250, 1257 (stating that "particular facts needed in particular cases are obtainable by bills of particulars or discovery"). The ambiguity and vagueness of the request for bill of particulars evinces an intent that it is being used as a wholesale discovery device.

Further, for purposes of the defendant's request for a bill of particulars, the indictment more than adequately puts the defense on notice of the offenses charged. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (stating that a bill of particulars "should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused"). Here, the defendant cannot argue that the conspiracy charge was improperly charged. While she apparently takes issue with the fact that the conspiracy charges did not allege overt acts, the government is not required to do so. *See, e.g., United States v. Ramos*, 666 F.2d 469, 475 (11th Cir. 1982) ("[T]he government need not allege or prove an overt act in a conspiracy prosecution such as this one brought under 21 U.S.C. §846.").

4

Further, the government—as conceded by the defense—has provided discovery in this matter, including *Jencks* material it was not required to disclose under the Standing Discovery Order. The defendant's request amounts to a demand for a roadmap as to how the government intends to prove its case. Needless to say, it is not the government's responsibility to review and summarize all the discovery for the defense. For purposes of a bill of particulars, "a defendant is only entitled to know the offense with which [s]he is charged, not all the details of how it will be proved." *United States v. Troutman*, 572 F. Supp. 2d 955, 965 (N.D. Ill. 2008). In discovery the government has turned over various reports setting forth the course of the investigation and summarizing the evidence. *See Remire*, 400 F. Supp. at 633 (denying motion for bill of particulars in Hobbs Act robbery case where the government produced "relevant police records from the date of the crime" as well as the "criminal complaint" specifying the acts the defendant is accused of committing). In short, the discovery provided to the defense sets forth the details of the offenses charged. The four-corners of the indictment along with the discovery furnished sufficiently apprise the defendant of the charges to enable her to prepare for trial. This extensive discovery further obviates the need for a bill of particulars. Indeed, "[w]here the Government has provided full discovery, a bill of particulars will rarely be necessary." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995).

### III. PRETRIAL DISMISSAL OF THE INDICTMENT BASED ON ALLEGEDLY INSUFFICIENT EVIDENCE IS IMPROPER

The defendant's Motion is properly construed as a pretrial motion to dismiss the indictment based on arguments that focus on the alleged lack of evidence against her. In other words, she apparently argues that the indictment is not based on sufficient probable cause,

because she was "merely present."[1] However, the defendant ignores that in this case a properly constituted Grand Jury returned an indictment against her and, thus, probable cause is conclusively presumed. *See United States v. Rodriguez*, No. S1 07 Cr. 699, 2008 WL 52917, at *5 (S.D.N.Y. Jan. 2, 2008). Indeed, it is well settled that an "indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry." *Gerstein v. Pugh*, 420 U.S. 103, 117 n. 19 (1975) (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)). And the defendant has not raised any facts alleging defects on the face of the indictment or impropriety in the Grand Jury. As the Court stated in *United States v. Rodriguez*, No. S1 07 Cr. 699, 2008 WL 52917, at *5 (S.D.N.Y. Jan. 2, 2008):

> An indictment is sufficient to try a defendant on the counts charged therein, and satisfies the requirements of the fifth amendment, *Lawn v. United States*, 355 U.S. 339, 349 (1958); it cannot even be challenged on the ground that it is based on inadequate or incompetent evidence, *see Costello v. United States*, 350 U.S. 359, 363 (1956). Furthermore, the return of an indictment eliminates the need for a preliminary examination at which a probable cause finding is made by a judicial officer pursuant to Rule 5(c) of the Federal Rules of Criminal Procedure. *Sciortino v. Zampano*, 385 F.2d 132, 133 (2d Cir. 1967).

---

[1] "Probable cause requires neither a prima facie showing of criminal activity nor a showing that evidence of crime will more likely than not be found." *United States v. Perea*, 848 F.Supp. 1101, 1104 (E.D.N.Y. 1994) citing *United States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987). "Rather, it requires only the possibility of criminal activity or the possibility that evidence of a crime will be found." *Perea*, 848 F.Supp. at 1104. Probable cause does not require certainty, *see e.g., Ornelas v. United States*, 517 U.S. 690, 695 (1996) (probable cause is a "commonsense, nontechnical" concept determined by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act"), *Illinois v. Gates*, 462 U.S. 213, 231-32 (1983) (probable cause "does not deal with hard certainties, but with probabilities"), and that probable cause must be determined from a fact-specific inquiry into the totality of the circumstances. *See e.g., Tenenbaum v. Williams*, 193 F.3d 581, 603 (2d Cir. 1999) ("[p]robable cause is a flexible term. There is no rigid demand that specific tests be satisfied"), *Adams v. Williams*, 407 U.S. 143, 149 (1972) (stating that in determining whether probable cause exists, "the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action").

Accordingly, the defendant's *pretrial* motion to dismiss the indictment for lack of probable cause is improper. The argument raised in the Motion is better suited to a Rule 29 motion *after* the evidence has been presented to the jury and to this Court.

## CONCLUSION

For all of the foregoing reasons, the government respectfully requests that this Court enter an order DENYING the Defendants' Motion to Dismiss the Indictment and, in the alternative, Motion for Bill of Particulars.

Respectfully submitted,

JEFFREY H. SLOMAN
UNITED STATES ATTORNEY

By:   /s  *Armando Rosquete*
ARMANDO ROSQUETE
Assistant United States Attorney
Florida Bar No. 0648434
99 N.E. 4th Street
Miami, FL 33132
Telephone: (305) 961-9377
Fax: (305) 536-7213
E-mail: armando.rosquete@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via CM/ECF this 19TH day of January 2010.

  /s *Armando Rosquete*
Armando Rosquete
Assistant United States Attorney